**NOT FOR PUBLICATION**

**Order Filed on April 12, 2017
by Clerk, U.S. Bankruptcy
Court - District of New Jersey**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| In re: | : | |
| | : | CHAPTER 7 |
| Joseph T. Guarracino and Yvette L. Guarracino, | : | |
| | : | CASE NO.:    14-30441 (SLM) |
| Debtors. | : | |
| _____ | : | |

**OPINION**

**A P P E A R A N C E S :**

Mellinger, Sanders & Kartzman, LLC
Steven P. Kartzman, Esq.
Nicole Alison Corona, Esq.
Joseph R. Zapata, Jr., Esq.
101 Gibraltar Drive, Suite 2F
Morris Plains, NJ 07950
*Counsel for Chapter 7 Trustee, Steven P. Kartzman*

Ronald Horowitz, Esq.
2561 Moody Blvd., Suite D
Flagler Beach, FL 32136
*Counsel for the Judgment Creditor, Alliance Shippers, Inc.*

**STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

By Order dated February 16, 2016, this Court approved the Chapter 7 Trustee's sale of two commercial trucks: (i) a 2005 Mitsubishi 14-foot refrigerated truck (the "**2005 Truck**"), and (ii) a 1999 International 20-foot refrigerated box truck (the "**1999 Truck**") (collectively, the "**Trucks**") (the "**Sale Order**").  (Docket No. 82).  In so ordering, the Court found that the Trucks, which were titled to GFP Distributors, Inc. d/b/a Garden Fresh Produce ("**GFP**"), were property of the co-debtor Joseph T. Guarracino's ("**Mr. Guarracino**") estate and that creditor Alliance Shippers, Inc. ("**Alliance**") had no interest in the Trucks.  (*Id.*)  On March 1, 2016, Alliance filed the instant *Motion for Reconsideration* requesting that the Court vacate the Sale Order, that the Trustee not be permitted to sell the Trucks, or in the alternative, that the proceeds be held in trust pending further order of the Court (the "**Reconsideration Motion**").  (Docket No. 105).

On March 22, 2016, the parties appeared before this Court for oral argument on the Reconsideration Motion.  At the close of the hearing, the Court reserved decision.  The Court further invited Alliance to submit a supplemental brief to the Court.  However, only the Trustee submitted a post-hearing letter, in further opposition to the Reconsideration Motion.  (Docket No. 116).  Pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court issues the following findings of fact and conclusions of law.[1]

## JURISDICTION AND VENUE

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court.  This matter is a core

---

[1] To the extent any of the findings of fact might constitute conclusions of law, they are adopted as such.  Conversely, to the extent any conclusions of law might constitute findings of fact, they are adopted as such.

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (E).  Venue is proper in this Court

pursuant to 28 U.S.C. § 1408.

## **PROCEDURAL HISTORY AND RELEVANT FACTS**

### **Pre-Petition Background**

Garden Fresh Produce Inc. filed a certificate of incorporation with the State of New Jersey

as a domestic profit corporation on August 8, 1989.  (*See* Docket No. 73; *see also* Docket No. 105,

Exs. B-C).  Garden Fresh Produce Inc.'s corporate charter was revoked in February 1995 for failing

to file annual reports for two consecutive years.  (*See* Docket No. 73; *see also* Docket No. 105,

Exs. B-C).  Mr. Guarracino and a partner operated Garden Fresh Produce Inc. as a partnership until

the partnership ceased, at which time Mr. Guarracino continued what he described as "basically

the same business" as a new entity, GFP.  (*See* Docket No. 105, Ex. D at 30-31).

GFP filed a certificate of incorporation with the State of New Jersey on August 2, 1995, as

a domestic profit corporation.  (*See* Docket No. 73; *see also* Docket No. 105, Exs. B-C).  Mr.

Guarracino was the sole president, shareholder and director of GFP.  (Docket No. 105, Exs. B, C

and D at 7).  GFP did business as "Garden Fresh Produce."  (*Id.*, Ex. C).[2]  In March 2009, GFP's

corporate charter was revoked due to its failure to file annual reports for two consecutive years.

(*Id.*, Exs. B, C).

According to Mr. Guarracino's deposition testimony, attached as Exhibit D to the

Reconsideration Motion, Mr. Guarracino purchased the 1999 Truck, new, in 1999 and the 2005

Truck, used, in 2011.  (*Id.*, Ex. D at 34, 36).  Mr. Guarracino testified that both Trucks were titled

to "Garden Fresh."  (*See id.*, Ex. D at 34, 37).  The purported copy of title to the 2005 Truck

attached as Exhibit F to the Reconsideration Motion is illegible.  (*See id.*, Ex. F at 2).

---

[2] According to the Chapter 7 Trustee, GFP may have possibly traded under the name "Garden Fresh."  (*See* Docket
No. 73 at 1; *see also* Docket No. 105, Ex. C).

Alliance is a creditor of GFP and Mr. Guarracino by virtue of a default judgment entered by the Superior Court of New Jersey on November 1, 2013 against GFP and Mr. Guarracino in the amount of $292,444.50 (the "**Default Judgment**").  (*Id.*, Exs. A and H).

**Post-Petition Background**

On October 6, 2014, Mr. Guarracino and Yvette L. Guarracino (together, the "**Debtors**"), filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  On October 7, 2014, Steven P. Kartzman was appointed as Chapter 7 Trustee (the "**Trustee**").  On October 30, 2014, Alliance deposed Mr. Guarracino as a representative of GFP.  (*Id.*, Ex. D).  Guarracino testified that "Garden Fresh" owned the Trucks at the time the business ceased.  (*Id.*, Ex. D at 31, 32, 35, 37).

On November 13, 2014, the Debtors appeared for the 341 Meeting.  (Docket No. 44, ¶ 3). The Trustee subsequently learned that the Debtors held an interest in certain vehicles as of the petition date, including but not limited to, the Trucks.  (*Id.* ¶ 4).  On February 15, 2015, Alliance filed a Proof of Claim (5-1) in the amount of $292,444.20 based on its Default Judgment.

**The Trustee's Turnover Motion**

On August 17, 2015, the Trustee filed a *Motion for Entry of Order Compelling Turnover of Property of the Estate and a Money Judgment for the Value of the Property Pursuant to 11 U.S.C. § 542(a)* (the "**Turnover Motion**") asserting the Trucks were property of the estate pursuant to Sections 541(a)(1) and (a)(6) of the Bankruptcy Code and seeking turnover from the Debtors.  (Docket No. 28).  On December 7, 2015, the Court granted the Turnover Motion (the "**Turnover Order**").  (Docket No. 39).

4

**The Trustee's Sale Motion and Alliance's Cross-Motion to Vacate Turnover Order**

On December 16, 2015, the Trustee filed a *Motion for Entry of an Order Authorizing Public Sale of Property of the Estate* (the "**Sale Motion**") seeking authorization by this Court to auction the Trucks.  (Docket No. 44).  On January 7, 2016, Alliance filed a contested adjournment request, requesting an adjournment of the Sale Motion on two bases: (i) the Trustee did not serve Alliance with the Turnover Motion; and (ii) Alliance, as creditor of GFP, owned the Trucks that the Trustee sought to sell.

On January 12, 2016, the Trustee filed a letter in opposition to Alliance's adjournment request.  (Docket No. 51).  The Trustee conceded that he "neglected" to serve Alliance with the Turnover Motion, but argued that Alliance's receipt of the timely filed *Notice of Proposed Public Sale* rendered his oversight "harmless."  (Docket No. 51).  In light of Alliance's claim of ownership, the Trustee offered to hold the auction's net proceeds until Alliance's claim was resolved either by agreement or Court Order.  The Trustee contended that Alliance rejected the proposal.  (*Id.*)

On February 2, 2016, Alliance filed a *Cross-Motion to Vacate Order Compelling the Turnover of Property* (the "**Cross-Motion**").  (Docket No. 75).  Alliance asserted that as a creditor of GFP, it has an interest in the Trucks that prevents their sale at the proposed public auction.  (*Id.*) Alliance further disputed the Trustee's claim that the revocation of GFP's charter administratively transferred title of the Trucks to Mr. Guarracino.  (*Id.*)

On the same date, the Trustee filed a supplemental letter brief in Support of the Sale Motion and in opposition to the Cross-Motion.  (Docket No. 73).  The Trustee argued that "upon the revocation of an entity's corporate charter, the assets of such entity vest in its individual members,"

5

relying on N.J.S.A. § 42:2C-56,[3] *Lancellotti v. Maryland Casualty*, 260 N.J. Super. 579, 583

(1992), and *In re Cryan*, No. 01-30688 (DHS), slip op. at 2 (Bankr. D.N.J. Nov. 16, 2001)

(Steckroth, J.).[4]  (Docket No. 73 at 2).  The Trustee asserted that ownership of the Trucks vested

in Guarracino as soon as GFP's charter was revoked and that consequently, Guarracino owned the

Trucks as of the petition date.  (*Id.*)  The Trustee contended that the same would result whether the

Trucks were titled to GFP, Garden Fresh Produce Inc., or a sole proprietorship trading as Garden

Fresh Produce.  (*Id.*)

On February 9, 2016, the Court held a hearing on the Sale Motion and the Cross-Motion

(the "**Sale Motion Hearing**").  At the Sale Motion Hearing, Alliance primarily relied on N.J.S.A.

§§ 14A:12-9 and 12-16, *Landa v. Adams*, 162 N.J. Super. 318 (App. Div. 1978) and *Kiernan v.

Kahn Davis, Inc.*, 132 N.J. Eq. 245 (Ch. 1942), in support of its claim that creditors, not

shareholders, are paid first upon a corporation's dissolution.  The Trustee argued that there is a

distinction between a corporation in good standing winding up its affairs, in which case creditors

are paid before shareholders, and a corporation whose charter has been revoked.  The Trustee

contended that in the latter instance, under *Lancellotti* and *Cryan*, assets and liabilities vest in the

individual shareholders as a matter of law.  When the Court asked Alliance to distinguish *Cryan*,

counsel requested additional time to submit a response because he had not read the *Cryan* case,

despite the Trustee's reliance on it.  The Court declined the request, and instead took a 40-minute

break to permit Alliance's counsel to review the case.  Despite the additional time, Alliance's

---

[3] This statute governs distribution of assets in winding up the activities of limited liability companies.  Therefore, it is inapplicable here as GFP was a domestic profit corporation.  However, this Court notes that N.J.S.A. § 42:2C-56 prescribes that "[i]n winding up its activities, a limited liability company shall apply its assets to discharge its obligations to creditors," including member-creditors, and that any surplus shall be distributed per the statute.  N.J.S.A. § 42:2C-56(a)-(c).
[4] In citing to this unpublished case, the Trustee indicated that the opinion was filed as document number 129 on that docket.

counsel said he was unable to access *Cryan*.[5]  Instead, Alliance's counsel insisted that the Trustee's

position is simply not the law of New Jersey and that creditors cannot be subordinate to

shareholders.

On February 16, 2016, the Court entered the Sale Order authorizing the Trustee to sell the

Trucks and denying the Cross-Motion.  (Docket No. 82).

### Alliance's Motion for Reconsideration

On March 1, 2016, Alliance filed the Reconsideration Motion.  (Docket No. 105).  In the

Reconsideration Motion, Alliance again asserted that Mr. Guarracino does not have an interest in

the Trucks and that this Court "substantially erred" when it found that the Trucks transferred to

Mr. Guarracino when GFP's charter was revoked.  (*Id.* at 4).  Particularly, Alliance asserted it is

"long-time New Jersey statutory authority . . . that assets of a dissolving corporation go to the

corporation's creditors before any distribution to the corporation's shareholders." (*Id.*)  Alliance

also requested that the Trustee hold the auction sale proceeds of the Trucks in escrow until further

Order of the Court.  (*Id.* at 5).

On March 15, 2016, the Trustee filed a letter brief in opposition to the Reconsideration

Motion (the "**Opposition**").  (Docket No. 110).  The Trustee asserted Alliance failed to provide

any new facts or arguments concerning the sale of the Trucks.  (*Id.* at 2).  The Trustee also certified

that "both Trucks have since been sold at public auction conducted on February 18, 2016, with

title transferred to the respective purchasers."  (*Id.* at 2 n.1).

On March 22, 2016, Alliance filed a letter reply to the Opposition, dated March 21, 2016.

(Docket No. 113).  Alliance argued that it had no notice of the Trustee's sale of the Trucks and

---

[5] Alliance's counsel explained that he went to the library in the courthouse during the break and was told that there
was no public PACER access.  This is true, as the library computers are connected to the court network.  The
courthouse provides PACER terminals on the fourth floor specifically for public access.  Counsel took no other steps
to obtain the case – such as requesting a copy from the Trustee.

that the proceeds should therefore remain in escrow pending the resolution of the Reconsideration Motion. (*Id.* at 1). Alliance contended that it presented controlling authority that this Court either overlooked or misinterpreted. (*Id.* at 2). Specifically, Alliance argued that Section 14A:12-16 clearly states that corporate creditors are paid before shareholders. (*Id.*) Alliance continued that neither *Lancellotti* (incorrected referred to as "Francelotti") nor "probably" *Cryan*, which counsel still had not reviewed because *Cryan* is not available on PACER, cite this statute. (*Id.*) Alliance asserted that Section 14A:12-9 explains the obligation of a dissolving corporation but does not hold that creditors get paid after shareholders. (*Id.*)

On March 22, 2016, the parties appeared before this Court for oral argument on the Reconsideration Motion (the "**Reconsideration Motion Hearing**"). At the hearing, Alliance argued that the Court did not adequately consider Section 14A:12-16 when it granted the Sale Motion, which it contended makes clear that claims against a corporation are paid before shareholders and that it has never been the law that shareholders get the corporate assets before creditors. Alliance asserted that Section 14A:12-9, in contrast, simply categorizes the obligations of a winding-down corporation without speaking to priority. When the Court asked Alliance to distinguish *Lancellotti* and *Cryan*, which the Court explained it found persuasive in ruling on the Sale Motion, Alliance responded that *Lancellotti* extends personal liability where the shareholders took assets before satisfying corporate debts. Alliance argued that no transfer of the Trucks to Mr. Guarracino occurred here, by operation of law or otherwise. Alliance continued that *Lancellotti* did not cite to Section 14A:12-16 because that provision did not apply in that case. However, Alliance's counsel could not distinguish *Cryan* because he still had not read the case.[6]    Alliance

---

[6] The Court suggested to Alliance's counsel that his asserted difficulty accessing the case could have been remedied by requesting a copy from the Trustee, to which counsel did not respond.

requested, in the alternative and in the event that this Court ruled against it, that the Court grant a stay of the distribution of the funds pending appeal.

The Trustee argued that both *Cryan* and *Lancellotti* applied Section 14A:12-9, which deals with a revoked charter. The Trustee contended that Section 14A:12-16, on the other hand, does not. The Trustee urged the Court to follow *Cryan* because the facts are similar to this case. The Trustee continued that title to the Trucks did not make a difference because the corporate assets and liabilities became Mr. Guarracino's assets and liabilities when GFP's charter was revoked.

At the close of the hearing, the Court reserved the decision. The Court expressed concern about Alliance's failure to present any new law or facts and counsel's failure to review *Cryan*, which the Court made clear was persuasive in its decision on the Sale Order for which Alliance sought reconsideration. The Court thus invited Alliance to submit supplemental briefing. Notwithstanding this invitation, only the Trustee submitted a post-hearing letter, in further opposition to the Reconsideration Motion. (Docket No. 116).

## DISCUSSION

### I.    Standard for Reconsideration

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Generally, "motions for reconsideration in the bankruptcy court, with some exceptions, are governed by Bankruptcy Rule 9023," which is governed by Rule 59 the Federal Rules of Civil Procedure. *See In re Christie*, 222 B.R. 64, 67 (Bankr. D.N.J. 1998) (citing *In re Reserve Prod., Inc.*, 190 B.R. 287, 289 (E.D. Tex. 1995)); *see also* Fed. R. Civ. P. 59. Pursuant to Rule 59(e), a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." *See* Fed. R. Civ. P. 59(e).

It is the moving party's burden to set forth "concisely the matters or controlling decision which the counsel believes the court has overlooked." *Christie*, 222 B.R. at 67 (quoting *Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp.*, 825 F. Supp. 1216, 1219 (D.N.J. 1993). Similarly, the moving party must show more than "mere disagreement with the court's decision and recapitulation of the cases and arguments considered by the court before rendering its original decision.'" *See Christie*, 222 B.R. at 68 (quoting *Database*, 825 F. Supp. at 1220).

Courts generally grant a motion for reconsideration if one of the following three scenarios are present: "(1) [a]n intervening change of controlling law has occurred, (2) evidence not previously available has become available, or (3) it is necessary to correct a clear error of law or prevent manifest injustice." *See Christie*, 222 B.R. at 67 (citing *Database*, 825 F. Supp. at 1220 (quoting *Weyerhaeuser Corp. v. Koppers Co.,* 771 F. Supp. 1406, 1419 (D. Md. 1991))).

In addition to these three scenarios, a court should only grant a motion for reconsideration "if the moving party has provided the court with dispositive factual matters or controlling decisions of law that were overlooked." *In re Engel,* 190 B.R. 206, 211-12 (Bankr. D.N.J. 1995), *aff'd*, 124 F.3d 567 (3rd Cir. 1997); *see Hunterson v. DiSabato,* 137 F. Supp. 2d 529, 549 (D.N.J. 1999) (granting reconsideration because the court overlooked controlling decisions of law), *rev'd*, 308 F.3d 236 (3d Cir. 2002) (reversing on the grounds that the district court did not conduct review of the parole board's decision). The Third Circuit has acknowledged that a motion for reconsideration is an "extraordinary remedy that should be used sparingly and limited to exceptional circumstances." *Christie*, 222 B.R. at 68; *see also Lony v. E.I. DuPont de Nemours & Co.,* 935 F.2d 604, 608 (3d Cir. 1991).

A court may not grant a motion for reconsideration if such motion is merely "used to reargue positions previously made or to otherwise ask the court to rethink issues already

considered, rightly or wrongly." *Engle,* 190 B.R. at 212 (citing *Resorts Int'l v. Greate Bay Hotel & Casino,* 830 F. Supp. 826 (D.N.J. 1992)); *see Feit v. Great-Wise Life & Annuity Ins. Co.,* 460 F. Supp. 2d 632, 643 (D.N.J. 2006).

## II.  Even Though Alliance Failed to Carry Its Burden, the Court On Its Own Will Grant Reconsideration of the Sale Order In Part

As an initial matter, the Reconsideration Motion was timely filed.  However, Alliance failed to provide any analysis demonstrating that this Court overlooked dispositive factual matters or controlling decisions of law in making its decision, or that newly discovered evidence exists that warrant reconsideration.  In fact, Alliance made clear that its basis for reconsideration was that the Court either overlooked or misinterpreted Section 14A:12-16, which the parties discussed and the Court explicitly considered during the Sale Motion Hearing.

The Court expressed on the record during the Sale Motion Hearing that it was troubled, but nevertheless felt constrained by the submissions of the parties.  Alliance did not identify, and the Court did not locate, any case law on this precise question.  However, this Court gave Alliance four opportunities to prove its claims, including multiple opportunities to distinguish *Cryan*.  Each time, Alliance failed to do so, repeating its complaints about accessing the case.  The Trustee first cited to *Cryan* on February 2, 2016 in its letter brief in support of the Sale Motion.  (Docket No. 73 at 2).  Alliance's counsel had a week to retrieve the case before the Sale Motion Hearing and almost two months to do so before the Reconsideration Motion Hearing.  Alliance's counsel's failure to read *Cryan* is not excusable.  Moreover, Alliance provides no authority for this Court to find that Alliance's interpretation of Sections 14A:12-9 and 12-16 is correct, instead relying on the Court to do the work to determine whether the statutory provisions conflict with respect to their application to voluntary and/or involuntary dissolutions.

Notwithstanding how Alliance presented its case, in the interest of justice, this Court on its own has re-examined the law on the relative priorities between creditors and shareholders of an involuntarily dissolved corporation and the interplay between the two statutory provisions. This Court finds as follows.

### A.  N.J.S.A §§ 14A:12-9 and 12-16

Alliance relies on Sections 14A:12-9 and 12-16 to support its claims that: (i) the assets of a corporation must be distributed to a corporation's creditors first, and (ii) as assets of GFP, the Trucks, or the proceeds therefrom, should have been distributed to Alliance, not the Trustee. This Court recognizes that this is what generally occurs when a corporation voluntarily dissolves. But, the issue here is: what happens when a corporation's charter is revoked and an involuntary dissolution occurs?  Section 14A:12-9 provides, in pertinent part:

> (1) Except as a court may otherwise direct, a dissolved corporation shall continue its corporate existence but shall carry on no business except for the purpose of winding up its affairs by
>
>> (a) collecting its assets;
>> (b) conveying for cash or upon deferred payments, with or without security, such of its assets as are not to be distributed in kind to its shareholders;
>> (c) paying, satisfying and discharging its debts and other liabilities; and
>> (d) doing all other acts required to liquidate its business and affairs.
>
> (2) Subject to the provisions of subsection 14A:12-9(1), and except as otherwise provided by court order, the corporation, its officers, directors and shareholders shall continue to function in the same manner as if dissolution had not occurred. In particular, and without limiting the generality of the foregoing,
>
>> (a) the directors of the corporation shall not be deemed to be trustees of its assets and shall be held to no greater standard of conduct than that prescribed by section 14A:6-14;
>> (b) title to the corporation's assets shall remain in the corporation until transferred by it in the corporate name;
>> . . .
>> (e) the corporation may sue and be sued in its corporate name and process may issue by and against the corporation in the same manner as if dissolution had not occurred;

12

> (f) no action brought against any corporation prior to its dissolution shall abate by reason of such dissolution.
>
> . . . .

N.J.S.A. § 14A:12-9.

Section 14A:12-16 provides that "[a]ny assets remaining after payment of or provision for claims against the corporation shall be distributed among the shareholders according to their respective rights and interests.  Distribution may be made in either or both cash and kind."  Section 14A:12-16.

The Trustee contends that Section 14A:12-9 applies to corporations whose charters are revoked, while Section 14A:12-16 applies to corporations dissolved while in good standing.  Upon further research, the Court finds that the Trustee's position is incorrect.  First, neither statute states that it applies to one kind of dissolution and not the other.  Second, the legislative history of Title 14A demonstrates that Sections 14A:12-9 and 12-16 apply to both voluntary and involuntary corporate dissolutions.  The 1968 Commissioners' Comment to Section 14A:12-1, which enumerates the methods for dissolution of a corporation, states that:

> The intent of the section is to make all dissolutions and all revocations and forfeitures of certificates of incorporation subject to the provisions of this Chapter, whether or not the causes for or the methods of such dissolution, revocation or forfeiture are stated in the section, except where the provisions of the Chapter are not compatible with a court directed dissolution, or special statute or common law proceeding.

N.J.S.A. § 14A:12-1, Comm'rs cmt. 1968.

### B. *Cryan* and *Lancellotti* Do Not Dictate the Relative Priorities of Corporate Creditors Versus Shareholders of a Dissolved Corporation

In granting the Sale Motion, the Court found *Cryan* and *Lancellotti* particularly persuasive. Despite giving Alliance numerous opportunities to distinguish them from the instant case, including during the Sale Motion Hearing and the Reconsideration Motion Hearing, Alliance's counsel admitted during the latter hearing that he had not even read the *Cryan* case.  Putting aside

the fact that Alliance is asking the Court to reconsider its decision without even knowing the premise of one of the two cases underlying that decision, the Court, on its own review, concludes that *Cryan* and *Lancellotti* do not address the relative priorities between creditors and shareholders of a dissolved corporation.

In *Cryan*, the debtor (an individual) was the sole owner of a corporation through which he operated a restaurant and owned a liquor license. No. 01-30688 (DHS), slip op. at 2. Prior to the bankruptcy filing, the corporation was sued in state court by one of its creditors. *Id.* The debtor described his debts as both consumer and business. *Id.* Crucial to the instant case, the debtor in *Cryan* proposed as part of his Chapter 13 plan to sell the liquor license held by the corporation and to pay the proceeds to the Chapter 13 trustee after satisfying the obligations of the corporation. *Id.*

About one month later, a receiver was appointed in the state court action and the liquor license was ordered to be sold. *Id.* at 3. The receiver discovered that the corporation's charter had been voided for more than 10 years. *See id.* After investigating the value of the liquor license and potential buyers, the receiver secured a proposed buyer and applied in the state court to have the sale approved. *See id.* The debtor objected to the sale, contending that the automatic stay applied, but the sale proceeded and was approved. *See id.* The debtor then filed a motion before the bankruptcy court seeking an injunction against the sale and requesting seizure of the license for the estate and control and supervision of the license's sale under the Bankruptcy Code. *See id.* at 3-4.

The debtor argued that his interest in the liquor license was property of the estate under 11 U.S.C. § 541, even though he admitted it was a corporate asset, because he became vested with the corporation's assets and liabilities by operation of law under *Lancellotti* when he continued to operate the business after it was dissolved. *Cryan*, No. 01-30688, slip op. at 4. The receiver

14

opposed the debtor's motion, arguing that the license was retained in the corporation's name and thus remained property of the corporation pursuant to N.J.S.A § 14A:12-9, or the license was held by the debtor as a trustee for the corporation's creditors and not as the debtor's personal property or as an asset of the estate, under *ERA Advantage Realty, Inc. v River Bend Dev. Co., Inc.*, 284 N.J. Super. 92, 99 (Law. Div. 1994) and *Matawan Bank v. Matawan Tile Co.*, 2 N.J. 116 (1949). *Cryan*, No. 01-30688, slip op. at 4-5.

After determining that a liquor license was an economic interest subject to assignment and sale, the court analyzed the rights and liabilities of directors and shareholders of a dissolved New Jersey corporation under Section 14A:12-9. The court observed that under the statute, a dissolved corporation may continue solely for the purpose of winding down. *See Cryan*, No. 01-30688, slip op. at 6-7 (citing N.J.S.A. § 14A:12-9(1)). The court continued that the penalty for continuing to operate a dissolved corporation for any other reason results in personal liability for persons who carry on the business of that corporation. *Cryan*, No. 01-30688, slip op. at 7 (quoting *Leventhal v. Atl. Rainbow and Paint Co., Ltd.*, 68 N.J. Super 406, 413 (App. Div. 1961). Thus, the court found that the debtor became personally liable for the debts incurred by the corporation. *Cryan*, No. 01-30688, slip op. at 7.

Next, the court found that assets and liabilities succeed by operation of law to the shareholders of a dissolved corporation. *See id.* (citing *Lancellotti*, 260 N.J. Super. At 583-84; *ERA Advantage*, 284 N.J. Super at 98). The receiver in *Cryan* contended that the debtor held the corporate assets in trust for the corporation's creditors. No. 01-30688, slip op. at 8. The court rejected the receiver's argument, citing Section 14A:12-9(2)(a). *Id.* The court observed that *ERA Advantage*, on which the receiver relied, does not stand for the proposition that shareholders hold the assets of a dissolved corporation in trust for creditors; instead, the court found that the case

15

stood for the rule that a constructive trust may be placed upon corporate assets and their proceeds for the benefit of the corporation's creditors. *See Cryan*, No. 01-30688, slip op. at 9.

The court thus denied the debtor's motion. *Id.* at 13. The court directed that upon completion of the sale, the receiver deposit the net proceeds with the estate, after deducting reasonable expenses, fees and costs, for distribution to the corporation's creditors pursuant to the Bankruptcy Code's priority scheme.[7] *Id.* at 14. Thus the court did not find, nor did it have to, that a corporate asset must be used to satisfy corporate creditors before vesting in the debtor. Indeed, the debtor himself proposed to use the liquor license proceeds to satisfy the corporation's debts before turning the remainder over to the Chapter 13 Trustee. *See id.* at 3. So, the specific dispute that exists here was not an issue in the *Cryan* case. Ironically, the parties in *Cryan* followed the distribution scheme—distribution to corporate creditors first—that Alliance seeks here.

In *Lancellotti*, the Secretary of State revoked a corporation's corporate charter in 1983 for non-payment of franchise taxes. 260 N.J. Super. at 582. The court found that "[t]he effect of the revocation was to dissolve the corporation." *Id.* (citing N.J.S.A. § 14A:12–8(b)). The two plaintiffs who operated the business continued to do so. *Lancellotti*, 260 N.J. Super. at 582. A year later, the corporation's fire insurance policy was amended to change the insured from the corporation to one of the plaintiffs, who owned the building in which the corporation operated. *Id.* One month later, the building and its contents were largely destroyed by fire. *Id.* The defendant insurer declined payment, asserting arson and arguing that the plaintiffs, including the insured individual, had no insurable interest in the contents and earnings of the business. *Id.*

---

[7] The court subsequently entered an accompanying order providing that that the proceeds of the sale of the liquor license by the receiver be turned over to the debtor's estate for distribution to the creditors of the corporation. *See In re Cryan*, No. 01 30688 DHS, 2006 WL 4452835, at *2 (Bankr. D.N.J. Apr. 5, 2006) (Steckroth, J.).

The court found that at the time of the fire, the business earnings and contents of the building formed part of the enterprise that was taken over and conducted by the plaintiffs in their individual capacities. *Id.* at 543. Thus, the plaintiffs had an insurable interest in the earnings and contents of the building. *Id.* In so finding, the court observed that "[a] dissolved corporation exists solely to prosecute and defend suits, and not for the purpose of continuing the business for which it was established." *Id.* at 583 (citing *Leventhal*, 68 N.J. Super. at 412; *Landa*, 162 N.J. Super. at 321). Moreover, the *Lancellotti* court quoted *Leventhal* for the proposition that "'persons who carry on the business of a corporation … after the charter has expired, or after dissolution, become personally liable as general partners.'" *Lancellotti*, 260 N.J. Super. at 583 (quoting *Leventhal*, 68 N.J. Super. at 413). The court found that "[t]he corollary of that proposition, in our view, is that such persons are also entitled to claim the earnings and assets of that business." *Lancellotti*, 260 N.J. Super. at 583-84.

*Lancellotti* stands for the proposition that individuals, such as shareholders, who continue to operate a business whose charter has been revoked claim the liabilities and assets of the corporation. Upon further review, this Court finds that it does not speak to the relative priorities between corporate creditors and those shareholders, which was not an issue in that case.

### C. GFP's Creditors Must Be Paid Before Mr. Guarracino's Estate Receives a Distribution From the Proceeds of the Sale of the 2005 Truck Because Mr. Guarracino Purchased It Before GFP's Corporate Charter Was Revoked

Although the Court found no cases that speak directly to this issue in the bankruptcy context, this Court finds two cases informative.

In *Global Landfill Agreement Group v. 280 Development Corporation*, 992 F. Supp. 692, at 693-94 (D.N.J. 1998), a group that entered into a consent order with the state environmental protection agency to clean up a landfill sued the defendant corporation, seeking contribution for

cleanup costs under the federal Comprehensive Environmental Response, Compensation and Liability Act ("**CERCLA**") and the New Jersey Spill Compensation and Control Act ("**NJ Spill Act**"). The defendant filed a motion to dismiss, arguing that it had dissolved, distributed all of its assets and finalized all of its affairs before the plaintiff commenced the lawsuit. *Id.* at 694. Therefore, the defendant claimed it could not be sued under CERCLA or the NJ Spill Act. *Id.*

The court granted the defendant's motion to dismiss, finding that a corporation may be sued while winding up, but only until its assets have been distributed and its affairs wound up (unless the dissolution was to avoid creditors or potential suits). *Id.* at 696 n.2. In so finding, the court analyzed Section 14A:12-9. *See id.* at 695-96. The court observed that the New Jersey statute cited a New York statute, N.Y. Bus. Corp. Law § 1006(a), which had been interpreted to mean that an action can be brought against a dissolved corporation until its affairs are fully adjusted and its assets distributed. *Global Landfill*, 992 F. Supp. at 695 (citing *Flute v. Rubel*, 682 F. Supp. 184, 187 (S.D.N.Y. 1988) (itself citing N.Y. Bus. Corp. Law § 1006)). The court noted that "[o]nce those affairs are fully adjusted, however, suing the defunct corporation is futile and the only remedy which remains is to maintain an action directly against the directors or shareholders." *Global Landfill*, 992 F. Supp. at 695 (citing *Flute*, 682 F. Supp. at 187; *ERA Advantage*, 284 N.J. Super. at 99).

The court in *ERA Advantage* cited to both Section 14A:12-9 and Section 14A:12-16 in concluding that individual shareholders were responsible to the plaintiff, who had sued the defendant corporation pre-dissolution and obtained a judgment post-dissolution, if remaining assets of the corporation were not sufficient to satisfy the judgment. *See* 284 N.J. Super. at 97. There, a real estate company sought to build a large warehouse project. The plaintiff real estate firm was retained to sell the warehouse units. *Id.* The plaintiff showed the property to a potential

18

buyer, who ultimately bought the property under a contract of sale that specifically provided that no real estate broker was in any way responsible for the transaction. *Id.* After the plaintiff sued the defendant, but before the closing, the defendant corporation dissolved. *Id.* The court did not specify whether the dissolution was voluntary or involuntary. The shareholders, in dissolution, received compensation from the sale proportionate to their respective ownership interests. *Id.* The court inferred that no monies were retained to satisfy the plaintiff's potential judgment. *Id.* Eventually, the plaintiff obtained judgment against the defendant. *Id.* Subsequently, an intervenor filed a motion asserting that the plaintiff had to institute a separate action or amend the complaint to allege a cause of action against the individual shareholders. *See id.* at 96.

The court denied the substantive basis of the motion, finding that the shareholders were responsible to the plaintiff to the extent of their share of the sale proceeds. *Id.* In so finding, the court first noted that the shareholders' obligation to the plaintiff arose solely as a result of their succession to the corporation's assets from the sale. *Id.* at 98 (citing N.J.S.A. § 14A:12-13(1)(b); *Dorn v. Transport of N.J.*, 200 N.J. Super. 159, 164-654 (App. Div. 1984)). The court next analyzed Section 14A:12-9 and found that "the Legislature required that a corporation in dissolution must satisfy and discharge its debts and other liabilities before it may be lawfully dissolved." *ERA Advantage*, 284 N.J. Super. at 99 (citing N.J.S.A. § 14A:12-9(1)(c)). The court continued that "the shareholders, having succeeded to the assets of the corporation, were obliged to treat the proceeds of the sale of the real estate as a trust fund, to the extent necessary to satisfy plaintiff's claim, pending the outcome of the litigation." *ERA Advantage*, 284 N.J. Super. at 99. The court continued that "[i]n the circumstances of this case there was absolutely no authority for the shareholders to appropriate the monies in question as their own." *Id.* The court specifically quoted Section 14A:12-16 as follows: "*Any assets remaining after payment of or provision for*

19

*claims against the corporation shall* be distributed among the shareholders according to their respective rights and interests." *ERA Advantage*, 284 N.J. Super. at 99 (emphasis in opinion).

The Court finds *Global Landfill*'s and *ERA Advantage*'s analyses of Sections 14A:12-9 and 12-16 persuasive. Both cases strongly suggest that a corporate dissolution does not immediately vest the corporate assets and liabilities in the shareholders. Indeed, certain references in the statutes would make no sense if the reverse was true. For example, Section 14A:12-9(1) states that "a dissolved corporation shall continue its corporate existence but shall carry on no business except for the purpose of winding up its affairs" by "collecting *its assets*," "conveying . . . such of *its assets* as are not to be distributed in kind to its shareholders" and "paying, satisfying and discharging *its debts and other liabilities*." N.J.S.A. § 14A:12-9(1) (emphasis added). Likewise, Section 14A:12-16 states that "[a]ny assets remaining after payment of or provision for claims against the corporation shall be distributed among the shareholders according to their respective rights and interests," implying that corporate liabilities are paid before distribution to shareholders. *See* N.J.S.A. § 14A:12-16. As noted above, the legislative history of Title 14A demonstrates that Sections 14A:12-9 and 12-16 apply to both voluntary and involuntary corporate dissolutions. *See* N.J.S.A. § 14A:12-1, Comm'rs cmt., 1968. Nothing in the language of the respective statutes suggests otherwise.

Upon further review, *Cryan* does not require a contrary result. As noted above, the *Cryan* court did not find, nor did it have to, that a corporate asset must be used to satisfy corporate creditors before vesting in the debtor. Indeed, the debtor himself proposed to use the liquor license proceeds to satisfy the corporation's debts before turning the remainder over to the Chapter 13 Trustee. *See* No. 01-30688, slip op. at 3. Instead, the *Cryan* court ordered that the net, post-sale

20

proceeds be deposited to the estate for distribution to the corporation's creditors, not to satisfy the debtor's personal creditors. *See id.* at 14.

Although neither of the parties mentioned *when* Mr. Guarracino purchased the Trucks, purportedly on behalf of GFP or "Garden Fresh," in their arguments, the Court finds the respective purchase dates crucial. Based on Mr. Guarracino's deposition testimony, he purchased the 1999 Truck in 1999, about 10 years before GFP's corporate charter was revoked. The 1999 Truck was therefore a corporate asset of GFP. Based on the foregoing statutory and case law, this Court concludes that it was incorrect in previously finding the 1999 Truck was property of Mr. Guarracino's estate. Upon reconsideration, the 1999 Truck did not vest in Mr. Guarracino upon dissolution of GFP, notwithstanding that he continued to operate the business after the charter was revoked. Instead, as a shareholder of GFP, Mr. Guarracino is entitled to the remaining assets of GFP, including the proceeds from the sale of the 1999 Truck, but only after GFP's creditors have been paid. Accordingly, Alliance wins, in spite of itself, with respect to the 1999 Truck.

However, a different outcome results for the 2005 Truck. Mr. Guarracino testified he purchased the 2005 Truck in 2011, two years *after* GFP's corporate charter was revoked. As stated in *Lancellotti*, "[a] dissolved corporation exists solely to prosecute and defend suits, and not for the purpose of continuing the business for which it was established." 260 N.J. Super. at 583 (citing *Leventhal*, 68 N.J. Super. at 412; *Landa*, 162 N.J. Super. at 321). Moreover, a dissolved corporation "shall carry on no business except for the purpose of winding up its affairs . . . ." N.J.S.A. § 14A:12-9(1). Purchasing a vehicle to use in the business's pre-revocation operations does not further winding up its affairs. The Court thus concludes that the 2005 Truck was never a corporate asset of GFP, notwithstanding that Mr. Guarracino titled it in GFP's name, because

21

GFP's corporate charter was revoked at the time Mr. Guarracino purchased the 2005 Truck.[8]

Accordingly, although the Court's reasoning in deciding the Sale Motion was not correct, the Court

reaches the same conclusion on reconsideration with respect to the 2005 Truck.

## CONCLUSION

For the aforementioned reasons, this Court will GRANT reconsideration in part and DENY

Alliance's request to vacate the Sale Order as moot.  The Court finds that the 1999 Truck is an

asset of GFP, and must be used to pay the liabilities of GFP first.  After satisfaction of GFP's

corporate liabilities, any surplus from the sale of the 1999 Truck will become an asset of Mr.

Guarracino's estate.  The Court further finds that the 2005 Truck, and any proceeds therefrom, is

not an asset of GFP, but an asset of Mr. Guarracino's estate.

An appropriate Order will enter.

Dated:  April 12, 2017.

Honorable Stacey L. Meisel
United States Bankruptcy Judge

---

[8] Nothing in the record indicates whether Mr. Guarracino used personal funds or converted corporate funds to purchase the 2005 Truck.  The Court's decision is based on the record before it, Section 14A:12-9(2)(a)'s provision that "the directors of the corporation shall not be deemed to be trustees of its assets . . ." and the fact that the purchase occurred after GFP's charter was revoked.

United States Bankruptcy Court
District of New Jersey

In re:                                                          Case No. 14-30441-SLM
Joseph T. Guarracino                                            Chapter 7
Yvette L. Guarracino
          Debtors

# CERTIFICATE OF NOTICE

District/off: 0312-2          User: admin          Page 1 of 1          Date Rcvd: Apr 12, 2017
                             Form ID: pdf903       Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Apr 14, 2017.
db/jdb         +Joseph T. Guarracino,   Yvette L. Guarracino,   17 Sycamore Court,   Westwood, NJ 07675-3523

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                    TOTAL: 0

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                                    TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 14, 2017                          Signature:   /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on April 12, 2017 at the address(es) listed below:
          Alla   Kachan   on behalf of Defendant Joseph T. Guarracino alla@kachanlaw.com
          Alla   Kachan   on behalf of Joint Debtor Yvette L. Guarracino alla@kachanlaw.com
          Alla   Kachan   on behalf of Debtor Joseph T. Guarracino alla@kachanlaw.com
          Andrew R. Turner   on behalf of Plaintiff  Nathel & Nathel courts@turnerlaw.net
          Denise E. Carlon   on behalf of Creditor   THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,
           AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2007-18,
           MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-18 dcarlon@kmllawgroup.com,
           bkgroup@kmllawgroup.com
          Dipesh   Patel   on behalf of Plaintiff Joseph T. Guarracino dpatel@saul.com
          Dipesh   Patel   on behalf of Debtor Joseph T. Guarracino dpatel@saul.com
          Dipesh   Patel   on behalf of Joint Debtor Yvette L. Guarracino dpatel@saul.com
          Dipesh   Patel   on behalf of Plaintiff Yvette L. Guarracino dpatel@saul.com
          Joseph R Zapata, Jr.   on behalf of Trustee Steven P. Kartzman jzapata@msklaw.net
          Joshua I. Goldman   on behalf of Creditor   THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,
           AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2007-18,
           MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-18 jgoldman@kmllawgroup.com,
           bkgroup@kmllawgroup.com
          Nicole Alison Corona   on behalf of Trustee Steven P. Kartzman ncorona@msklaw.net
          Stephen  B. Ravin   on behalf of Joint Debtor Yvette L. Guarracino sravin@saul.com,
           jgillman@saul.com
          Stephen  B. Ravin   on behalf of Plaintiff Joseph T. Guarracino sravin@saul.com,
           jgillman@saul.com
          Stephen  B. Ravin   on behalf of Debtor Joseph T. Guarracino sravin@saul.com,   jgillman@saul.com
          Stephen  B. Ravin   on behalf of Plaintiff Yvette L. Guarracino sravin@saul.com,
           jgillman@saul.com
          Steven P. Kartzman   kartztee@optonline.net,
           jzapata@msklaw.net;nj16@ecfcbis.com;ncorona@msklaw.net;angiea@msklaw.net
          Steven P. Kartzman   on behalf of Trustee Steven P. Kartzman kartztee@optonline.net,
           jzapata@msklaw.net;nj16@ecfcbis.com;ncorona@msklaw.net;angiea@msklaw.net
                                                                              TOTAL: 18