*Mellinger, Sanders & Kartzman, LLC*

ATTORNEYS AT LAW

101 GIBRALTAR DRIVE
SUITE 2F
MORRIS PLAINS, N.J. 07950

(973) 267-0220

FAX (973) 267-3979

www.msklawyers.com

E-MAIL   SKARTZMAN@MSKLAW.NET
         JZAPATA@MSKLAW.NET
         JLOEWENSTEIN@MSKLAW.NET

LOUIS P. MELLINGER
MICHAEL S. SANDERS
STEVEN P. KARTZMAN
JOSEPH R. ZAPATA, JR.
JUDAH B. LOEWENSTEIN
SEYMOUR RUDENSTEIN (1933-1983)
JACOB MELLINGER (1928-2001)

OF COUNSEL
WALTER G. LUGER
PETER ROSEN
ROBERT D. ROSEN
TERRI JANE FREEDMAN
JOSÉ R. TORRES

Essex County Office
46 Essex Street
Millburn, N.J. 07041
(973) 218-0220

**PLEASE RESPOND TO:**
 MORRIS PLAINS

September 11, 2018

**VIA ECF AND ELECTRONIC MAIL**
Honorable Stacey L. Meisel
United States Bankruptcy Court
Martin Luther King, Jr. Federal Building
50 Walnut Street, 3rd Floor
P.O. Box 1352
Newark, New Jersey 07101-1352

   Re: Joseph T. and Yvette L. Guarracino
      Case No. 14-30441 (SLM)

      Motion to Partially Vacate the April 26, 2018 Order and for Sanctions and Cross-Motion for a Determination that Alliance Shippers, Inc. does not have Standing to Oppose the Fee Application Filed by the Attorneys for the Trustee

      Hearing Date: September 18, 2018 at 2:30 p.m.

Dear Judge Meisel:

  As Your Honor is aware, our firm represents Steven P. Kartzman, the Court-appointed Chapter 7 Trustee (the "Trustee") in the above-referenced bankruptcy case. Please accept this letter brief in opposition to the Motion to Partially Vacate the April 26, 2018 Order and for Sanctions (the "Motion to Vacate") filed by Alliance Shippers, Inc. ("Alliance"), and in support of the Trustee's cross-motion for a determination that Alliance does not have standing to contest the fee application filed by the attorneys for the Trustee (the "Cross-Motion").

      **Improper and Unfounded Allegations Levied Against the Trustee**

  Before addressing the lack of merit in Alliance's Motion to Vacate, it is important to address the repeatedly improper and unfounded allegations raised by Alliance and levied against

the Trustee and his counsel.

On December 16, 2015, the Trustee filed a Motion for Entry of an Order Authorizing Public Sale of a 1999 International Refrigerated Truck and a 2005 Mitsubishi refrigerated truck. See Dkt. No. 44. A Notice of Proposed Public Sale was filed on the same date. See Dkt. No. 45. Counsel for Alliance asserted a need for an adjournment of the Motion because we neglected to serve him with a copy of the motion. While the Trustee acknowledges that Alliance had not been served with a copy of the motion, a copy of the Notice of Proposed Public Sale was served on Alliance directly, as well as, Alliance's counsel. See Dkt. No. 47. Since that time, more than 2 1/2 years ago, Alliance's counsel has not only been served with all motions filed, but our office has repeatedly taken additional steps to email filed pleadings to counsel to make sure that they are received. Moreover, this event over 2 1/2 years ago has no bearing on the fee application filed by the attorney for the Trustee, nor on Alliance's present issue over the form of order entered on April 26, 2018.

As to the auction adjournment request, as explained to the Court by correspondence dated January 12, 2016, the Trustee would not consent to adjourn the hearing for several reasons, including: a) the auctioneer made extensive efforts to advertise the auction; b) the two trucks in question had been stored by the Debtor at two locations owned by others and it became necessary to tow the trucks to a secure location; c) inasmuch as the bankruptcy estate only had the two trucks to sell at auction, appraised by Atkins Appraisal at a total of $14,500, to be feasible the auction had to be conducted with two other bankruptcy auctions; d) counsel for Alliance had received the Notice of Proposed Public Sale and had ample time to file opposition; and e) the Trustee offered to hold the net proceeds of the auction sale pending a resolution of Alliance's claim by agreement or Court Order. See Dkt. No. 51. The adjournment request was granted over the Trustee's objection and a hearing date for the motion was scheduled for February 9, 2016. Based upon the same, the Trustee rescheduled the auction for a date after the hearing. Following subsequent briefing by the parties, including the filing of a cross-motion by Alliance to vacate a prior order of the Court compelling the turnover of the trucks in question to the Trustee, a hearing was held in which the Trustee's motion to sell the trucks was granted and Alliance's cross-motion was denied. An order reflecting the same was entered by the Court on February 16, 2016. See Dkt. No. 82. As the motion had been granted in favor of the Trustee, the auction of the trucks went forward as scheduled on February 18, 2016. Despite counsel's allegation that the Trustee rushed ahead with a sale, the auction was merely scheduled for a date after the hearing. Had Alliance been successful on its cross-motion and the Trustee's motion been denied, the Trustee would have canceled the auction. On March 1, 2016, Alliance filed a motion for reconsideration of the February 16, 2016 order. See Dkt. No. 105. Thereafter, 14 months after the auction was conducted, on April 12, 2017, an order was entered granting in part and denying in part Alliance's motion for reconsideration. See Dkt. No. 150. Under the Court's April 12, 2017 order, the truck which was sold at auction for $9,500 was deemed to be property of the bankruptcy estate, and the truck that was sold at auction for $2,500 was deemed to be property of Garden Fresh Produce ("GFP"), a corporation owned by the Debtor. The April 12, 2017 order further provided that the proceeds from the sale of the truck deemed to be owned by GFP (the "GFP Truck") were to be utilized to pay creditors of GFP.

Following entry of the April 12, 2017 Order, the Trustee undertook to investigate the realm of creditors of GFP for the purposes of paying the same. The only funds in the Trustee's

possession available to pay such claims was the $2,500 received from the sale of the GFP Truck, less the costs of sale.[1]  As a result of the Trustee's investigation, the Trustee determined that the State of New Jersey Division of Taxation had a secured lien against the proceeds, well in excess of the net proceeds, that preceded any other claims, including the claims asserted by Alliance. Indeed, the State of New Jersey was the only creditor holding a secured claim, following an amendment filed on June 29, 2017, modifying the claim of the Internal Revenue Service from secured to priority.  As a result, the Trustee entered into negotiations with the State of New Jersey for a payment to the State of New Jersey from the net proceeds, with a carve-out for the benefit of the estate.  Despite counsel's statements in the Motion to Vacate that the Trustee secretly entered into a proposed compromise with the State of New Jersey, the Trustee merely entered into negotiations with State of New Jersey because the Trustee believed the State of New Jersey had a first in time interest in the proceeds.[2]  As submitted by the Trustee in his response to the objection to the proposed compromise with the State of New Jersey [Dkt. No. 171], it has long been established in the Third Circuit that priority between competing liens is governed by the principle that the first in time is the first in right. Monica Fuel v IRS, 56 F.3d 508, 511(3d Cir. 1995).  Moreover, N.J.S.A. § 54:49-1 gives New Jersey the right to a lien from the time taxes are due and/or from the time of an assessment, without further action. Monica Fuel, 56 F.3d at 509; see also State v United States (In re Johns), 242 B.R. 265 (Bankr. D.N.J. 1999). A review of claim 10-1 filed by the State of New Jersey revealed that GIT-ER taxes for the periods ending December 2007 through June 2009 were due by reason of underpayment on tax returns of Garden Fresh produce ("GFP") in the total amount of 4,452.57. Thus, the secured claim filed by the Division in that amount exhausted the collateral value of the truck in issue, in the sum of $2500.  A review of the Court's opinion in Adv. Pro. No. 14-02069 at page 4, reveals the PACA debt owed to Krisp-Pak, upon which Alliance relies, arose between April 2010 and July 2010. Accordingly, as between the lien of the New Jersey Division of Tax and that of Krisp-Pak, the lien of the New Jersey Division of Tax is first in time and, thus first in priority. Because that lien exhausted the value of the truck at issue, there was no remaining value in that truck to which a Krisp-Pak lien could attach.  As the net proceeds would be insufficient to satisfy the State of New Jersey's secured claim, there was no need to negotiate with any of the other creditors, including Alliance.  Further, once the Trustee reached a settlement with the State of New Jersey as to the treatment of its claim, Alliance was clearly put on notice of the settlement [see Dkt. No. 163] and filed an objection to the proposed settlement. [See Dkt. No. 169].

**The April 26, 2018 Order**

On January 9, 2018, a hearing was conducted on the Trustee's application to approve the compromise with the State of New Jersey.  At the hearing, the Court suggested that the parties go into the hall to see if a negotiation could be reached.  Following a discussion between the parties, the parties agreed that from the $2,000 carve-out to the estate, agreed upon by the State of New Jersey, Alliance would receive $600, leaving a carve-out of $1,400 for payment of administrative expenses.  See Transcript (the "Transcript") attached to the Motion to Vacate at Exhibit A, p. 2, ln. 4 – 12.  As the estate was administratively insolvent, it was the Trustee's understanding that the payment of $600 would resolve Alliance's claim against the estate.  See Transcript, p. 3, ln.

---

[1] The costs of sale included auctioneers fees ($250), towing ($450), and a duplicate title fee ($60).
[2] The State of New Jersey's claim was based upon taxes not paid by GFP for the period from October 1, 2007 to June 30, 2009.  Alliance's claim was based upon a judgment entered on November 1, 2013 based upon purchases between April and July, 2010.

25 – p. 4, ln. 2. As appears from the Transcript at page two, line 25, the Court asked Mr. Horowitz if there was anything further. On page 3 at line 20, Mr.Horowitz indicated that unless there was an appeal of the Court's decision in the adversary proceeding, that he was free to resume his execution proceedings [against Mr. Guarracino]. There was no reservation or indication of any other claim against property of the bankruptcy estate. Indeed, it was the Trustee's belief that the parties did not resolve a fraction of Alliance's claim that day, that they resolved the dispute as to Alliance's claim as against the bankruptcy estate [but not against Mr. Guarracino].

Following the hearing, the parties exchanged emails and proposed consent orders. As stated in an email to Alliance's counsel on January 26, 2018, the settlement required the Trustee to pay Alliance $600 and that apart from the $600, Alliance would not be expecting any recovery from the bankruptcy estate. A true and correct copy of the January 26, 2018 email is annexed to the Certification of Steven P. Kartzman (the "Kartzman Certification", submitted simultaneously herewith, as Exhibit A. As stated in an email to counsel for Alliance dated February 13, 2018, the Trustee believed that Alliance would only be expecting a check from the Trustee for $600 and no more as the estate was administratively insolvent. A true and correct copy of the February 13, 2018 email is annexed to the Kartzman Certification as Exhibit B. On March 19, 2018, the Trustee sent a further email with a proposed revised consent order to counsel advising that his understanding of the settlement was that Alliance was to receive $600 and would not be seeking anything further from the Trustee as the estate is administratively insolvent, and that the Trustee added language to paragraph 2 of the consent order to reflect that Alliance would not be expecting any further payment beyond the $600. A true and correct copy of the March 19, 2018 email is annexed to the Kartzman Certification as Exhibit C. In an effort to accommodate Alliance, the Trustee added to paragraph 4 that Alliance was entitled to the treatment provided in the Court's opinion and the Court's order entered in Alliance's adversary proceeding at Adv. Pro. Dkt. No. 29 and 30. In response, counsel advised that the proposed consent order was unacceptable and that the Trustee should notify the Court that there would be no consent order. See Motion to Vacate, Exhibit B. By correspondence filed on March 27, 2018, the Trustee advised the Court that the parties were unable to agree to a form of order and requested the Court's assistance with the same. See Dkt. No. 178. The Trustee further enclosed for the Court a copy of the Transcript, as well as, a proposed form of order. A copy of the correspondence to the Court and attachments are annexed to the Kartzman Certification as Exhibit D. As the Court will note, decretal paragraph 2 of the proposed order specifically provides that "Alliance Shippers shall have no further claim against the Chapter 7 bankruptcy estate." On March 28, 2018, a general notice was issued directing the parties to each submit a proposed order with a written submission explaining why the Court should enter their form of proposed order. See Dkt. No. 180. On April 5, 2018, a courtesy copy of the notice was emailed by the Trustee to counsel for Alliance. A true and correct copy of the April 5, 2018 email is annexed to the Kartzman Certification as Exhibit E.

On April 16, 2018, the Trustee filed his written submission with the Court addressing why the Court should enter his form of proposed order. A true and correct copy of the Trustee's written submission and attachments is annexed to the Kartzman Certification as Exhibit F. At page two of the correspondence to the Court, the Trustee specifically addresses the basis for language with respect to Alliance not having a further claim against the estate and that the resolution resolved all of Alliance's claim.

On April 18, 2018, two days later, Alliance filed its written submission with the Court as to why its proposed order should be entered, predominately addressing its issue with the categorization of the State of New Jersey's claim. A copy of Alliance's written submission and attachment is annexed to the Kartzman Certification as Exhibit G. No mention or objection is made whatsoever in Alliance's submission with respect to decretal two of the Trustee's proposed order that "Alliance Shippers shall have no further claim against the Chapter 7 bankruptcy estate."

On April 26, 2018, an Order was entered by the Court in the form submitted by the Trustee, which included the language at issue that "Alliance Shippers shall have no further claim against the Chapter 7 bankruptcy estate." See Dkt. No. 185. On April 26, 2018, an email was sent to counsel for Alliance with a copy of the April 26, 2018 Order. A true and correct copy of the April 26, 2018 email is annexed to the Kartzman Certification as Exhibit H. Following entry of the April 26, 2018 Order, a check for $600 was sent to Alliance in settlement of its claim. The check was subsequently cashed by Alliance and not returned to the estate.

Alliance never filed an appeal of the Court's April 26, 2018 Order. Until the filing of the current motion on August 28, 2018, four months after entry of the April 26, 2018 Order, Alliance never sought reconsideration of the April 26, 2018 Order.

**Alliance's Request to Vacate the Court's Order**

The sole authority cited to by Alliance in one paragraph of its three page Motion to Vacate is Rule 7054. Rule 7054 is completely inapplicable to the matter at hand and as specifically stated in the rule, "Rule 54(a)-(c) Fed.R.Civ.P. applies in adversary proceedings." Fed.R.Bankr.P. 7054. The April 26, 2018 Order was not entered in connection with an adversary proceeding and as such, Rule 7054, and by reference, Rule 54, do not have any applicability to the issue at hand.

To the extent that Alliance had sought reconsideration of the Order under Rule 9023, incorporating by reference Fed.R.Civ.P. 59, such motion had to be brought no later than 14 days after the entry of the April 26, 2018 Order. Rule 9023 provides a strict deadline of 14 days to bring a motion to alter or amend a judgment. See Fed.R.Bankr.P. 9023; see also In re Doe, 681 F. App'x 106, 108 (3d Cir. 2017). Further Fed.R.Bankr.P. 9006 provides that courts may not enlarge the time for bringing an action to amend or alter the judgment under Rule 9023. As Alliance failed to timely bring a motion with the 14 day period, Alliance is barred from seeking relief under Rule 9023.

Further, even had the motion been timely brought, "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). The burden is on the moving party to set forth "`concisely the matters or controlling decision which the counsel believes the court has overlooked.'" In re Christie, 222 B.R. 64, 67 (Bankr. D.N.J. 1998)(quoting Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp., 825 F. Supp. 1216, 1219 (D.N.J. 1993)). A motion for reconsideration will only be granted if the moving party has provided the court with dispositive factual matters or controlling decisions of law that were overlooked. In re Engel,

190 B.R. 206, 211-12 (Bankr. D.N.J. 1995) aff'd, 124 F.3d 567 (3rd Cir. 1997); see Hunterson v. DiSabato, 137 F. Supp. 2d 529, 549 (D.N.J. 1999).

In the present case, Alliance has not presented any newly discovered evidence or controlling decisions that the Court has overlooked. Alliance has not addressed why it did not raise an issue with the language of decretal paragraph two of the April 26, 2018 until the issue of standing was raised at the hearing on the fee application, filed by the attorneys for the Trustee. Alliance's claim that the language in decretal paragraph two was for no reason other than retribution is just more vitriol on the part of Alliance's counsel and has no basis in fact.

Even were Alliance to seek to partially vacate the April 26, 2018 Order pursuant to Rule 60(b)(6), there is no basis for the same. Rule 60(b)(6) provides in pertinent part that the court may relieve a party from an order, including orders granting relief from the automatic stay, for "any other reason justifying relief from the operation of the judgment." See Fed. R. Civ. P. 60(b)(6); see also In re Gledhill, 76 F.3d 1070, 1074 (3d Cir. 1996). "The principal purpose of Rule 60(b)(6) is to deal with unforeseen contingencies." In re Durkalec, 21 B.R. 618, 620 (Bankr. E.D. Pa. 1982). To obtain relief under Rule 60(b)(6), the movant must demonstrate exceptional circumstances. See In re Gledhill, 76 F.3d at 1081; see also In re Fine Paper Antitrust Litig., 840 F.2d 188, 194 (3d Cir. 1988).

There are no unforeseen circumstances here or exceptional circumstances. The settlement reached with the Trustee in Court on January 9, 2018 resolved Alliance's claims and Alliance did not reserve any other claims against the estate. The Trustee made it clear to Alliance's counsel in his emails his belief that Alliance had agreed not to seek any additional recovery from the estate. The Trustee specifically addressed these issues in his submission to the Court as to why the order should provide that the settlement resolves Alliance's claims against the estate. Alliance failed in its submission to the Court to even address the proposed language in decretal paragraph two. The April 26, 2018 Order was entered and Alliance makes no attempts to further address or seek a reconsideration of the same. In short, Alliance provides no basis why this Court should vacate any portion of the April 26, 2018 Order. It seems apparent that Alliance's motivation is solely in order to have standing to attack the pending fee application by the Trustee's attorneys, despite the fact that the estate only contains $20,160.30 against a fee application for $34,183.50. It is also noteworthy that the application for compensation ceased with services rendered in March, 2017, given that the estate was administratively insolvent. The attorneys for the Trustee thereafter rendered services through June 2018, valued at an additional $10,324. Accordingly, the Trustee respectfully requests that the Court deny Alliance's Motion to Vacate.

### Cross-Motion that Alliance Lacks Standing to Oppose the Fee Application Filed by the Attorneys for the Trustee

For the reasons as set forth above, the Trustee respectfully submits that there is no basis to vacate any portion of the April 26, 2018 Order. To the extent that the language in decretal paragraph two of the April 26, 2018 is not vacated, Alliance does not have standing to object to the attorneys' fee application.

In order to have standing in a bankruptcy case, a person must have a pecuniary interest in

the outcome of the bankruptcy proceedings. See In re Toms, 229 B.R. 646, 650 (Bankr. E.D. Pa. 1999)(citing In re Cult Awareness Network, Inc., 151 F.3d 605 (7th Cir. 1998); see also In re Piccoli, 2006 Bankr. LEXIS 3097, at *4 n.5 (Bankr. E.D. Pa. Nov. 14, 2006).

The April 26, 2018 Order provided for a settlement payment to Alliance, which has been paid and not returned to the estate. As a result, Alliance's claims against the estate have been satisfied. As Alliance no longer has a pecuniary interest in the outcome of the bankruptcy proceedings, Alliance lacks standing to object to the Trustee's final fee application.

Wherefore, for the reasons as set forth above, the Trustee submits that the Court should deny Alliance's Motion to Vacate and grant the Trustee's Cross-Motion finding that Alliance lacks standing for the purposes of objecting to the Trustee's final fee application.

                                                Respectfully yours,

                                                */s/ Joseph R. Zapata, Jr.*

                                                Joseph R. Zapata, Jr.

JRZ/
cc:     Ronald Horowitz, Esq. (via email and First Class Mail)